By the Court—-Woodruff, J.
The various points urged by the Counsel for the appellant, on the argument herein, (with one or two exceptions,) all involve the questions whether usury was sufficiently alleged as a defense in the defendant’s answer, and whether evidence of such usury was given on the part of the defendants which it was proper to submit to the Jury.
I. The action is brought upon a promissory note made by the defendant Cohn, and indorsed by the defendant Pecare, and the plaintiff claims as the Beceiver of the effects of the Island City Bank, who were holders of the note when the plaintiff was appointed Beceiver.
The answer states that the Bank discounted the note for the defendant Pecare, under and in pursuance of an agreement wherein it was, corruptly and against the form of the statute, agreed that the said bank should lend and advance to him the sum of three hundred dollars, and charge to him the interest on the sum of five hundred dollars; and that this was done by the form of a discount of the note in question for five hundred dollars, with the understanding that (notwithstanding interest was to be charged, as above agreed, on five hundred dollars) he *675 should only receive or draw out three hundred dollars, and the residue of the apparent proceeds of the discount should remain in bank until the note became due, and then be applied towards the payment of the note.
To whatever criticism this answer may be liable for want of particulars of rate of interest, or of the time for which it was charged, we do not hesitate to say that it states a transaction which was usurious on its face.
"Whenever the discount took place, the answer plainly imports a discount for the time the note then had to run. That is the natural and proper meaning of an averment that the Bank discounted the note. Such a statement imports (when unaccompanied by other averments) that the Bank received the note and deducted therefrom the discount for the unexpired term, and allowed to the party for whom it was discounted the then present worth. And so, in the absence of further specification, that would be taken to mean a discount at the legal rate of discount.
If the plaintiff desired any more specific details of time or rate, or other particulars of the transaction, he should have sought it by motion.
That a corrupt agreement to lend three hundred dollars and charge the borrower the interest on five hundred dollars, is a usurious agreement, we think clear; and the delivery to the lender, of a promissory note, in execution of such an agreement, passes no title.
2. Did the defendants prove such an agreement, or give evidence tending to establish it, which it was proper to submit to the Jury.
The defendant Pecare, testified, that on his application to the Bank to procure the discount of the note, the President “ said he would discount the note for five hundred dollars, charging me,” (Pecare,) “interest of course, and that I should give my check for $200, which would be kept there against me, (to be made out to the order of the cashier,) so that I would have $300, less the discount on the $500 I agreed to that arrangement, and it was carried out. The full discount on the whole $500, was taken out, *676 from the time I received the note until it became due. I was credited with the amount of the discount; my book showed $400 and odd. I gave back my check for $200. I could not draw the $500, because I had given my check to the cashier for $200. I could not draw the $200, because they had my check for it, and my account was charged for the $200. I was allowed to draw for the $300 less the discount on $500.”
The book-keeper of the Bank showed that the note for $500 was discounted, and the proceeds $497.12, placed to the credit of Pecare, on the 20th day of August, 1857, and that the check for $200, was charged to Pecare against that and other credits in account, on the next day. This established, in contro vertibly, that Pecare had the use of no more than $297.12 upon that transaction.
To our minds, this testimony did prove the agreement set up in the answer, and that it was carried into execution.
Computation shows, that on the day of the discount, August 20th, the note had 29 days to run, (to September 18th, when it became due,) and that the Bank charged $2.88 for the discount, which is a few cents over the legal discount, and, indeed, a few cents over the legal interest of 7 per cent on $50.0 for the 29 days.
There was no material contradiction of this testimony; on the contrary, the evidence of a similar previous transaction, which might very properly bear upon the intent of the parties, and the entries in the books, seem to corroborate it.
Indeed, had the Court instructed the Jury that usury was established by the proof, we incline to think such an instruction would have been sustained. It is at least pal-" pable, that the most the plaintiff could ask was', that the case be submitted to the Jury.
The plaintiff, however, insisted that he was entitled to a peremptory instruction excluding the question of usury from the case. So far from being entitled to this, he had, we think, all the indulgence which, in any aspect of the proofs, the case would justify.
*677 From, the tenor of the charge and the corase of examination of the witnesses, it appears that the effect of the evidence tending to establish usury was sought to be avoided by this view of the transaction, viz.: That the note in question was discounted at a legal rate and the proceeds placed to Pecare’s credit, but that he was required to leave in the hands of the cashier his check for $200, as security to that extent for the payment of the note when it should become due. That there was, therefore, no permission to the Bank to use $200, and no intent to retain or charge interest on a greater sum than was lent, and placed out of the control or use of the Bank during the period of the loan.
It is obvious that the fact, proved without contradiction, that the Bank charged Pecare the $200 check at once, and so took the money to that extent from his account and had it in hand to use for its own purposes without restriction, pretty effectually contradicted such an explanation of the transaction. And, besides, we are not here to be regarded as conceding that any such explanation was warranted by the evidence, or could affect the legal character of the transaction, so long as Pecare was only allowed the use of $297.12, and the $200 was, in fact, in the possession and at the use of the Bank, and the check protected them in that possession and use.
Kevertheless it will suffice to say that the plaintiff had the benefit of a fair submission of this theory of his case to the Jury, and they have rejected it.
That the whole question, including the actual intent of the parties, might be passed upon as one of fact, and that the plaintiff’s attempted explanation might be presented to their minds, so that, if there were no intentional corrupt agreement to take usurious interest on the loan, the plaintiff might have a verdict, the Court instructed the Jury, in a manner most liberal to the plaintiff, that “if the agreement was, that on the note being discounted and passed to the credit of Pecare, $200 was to be left there for security for the ultimate payment of the note, without *678 any expectation on the part of the Bank to use that $200 to its own profit, the agreement would not be usurious, and the plaintiff would be entitled to recover.”
But the Jury found that the arrangement was made with the intent of securing to the Bank interest on $500, (less discount,) for the time the note had to run, for the use of $300, (less discount,) and upon this finding, we think the instruction that such an arrangement was usurious, clearly right.
In regard to the plaintiff’s exceptions, not embraced by the views thus expressed, we remark, first, that the plaintiff’s offer to admit the facts stated in the answer, would, we think, have justified the Court in deciding, as matter of law, and without receiving further evidence, that the defendant was entitled to a verdict. The reception of evidence has done the plaintiff no harm. It has rendered the defendant’s case, it may be, more definite in its details than was set down in the answer, without departing therefrom in any substantial particular. The Jury have found from the evidence, what the proposed admission would have required them to find.
The testimony in regard to the previous note discounted under a similar arrangement, was not important, but it might properly aid in showing the corrupt intent.
The conversation with the plaintiff tended to show an admission by him that only $300 had been received by the defendant.
The question what a receipt testified to was given for, if it had called for the contents of the receipt, would have been objectionable, but it simply called for the purpose of the receipt. It was the answer to the question which was in this respect objectionable, and that was not objected to. If the objection that the receipt should be produced, ought to have led to the exclusion of the question, the objection was afterwards obviated by the production of the receipt.
It is suggested on the argument, that the transaction was a sale of the note by Pecare, and that a sale for any *679 sum, however small, would not have made the transaction, usurious. No such question appears to have been raised on the trial. If it was, the verdict of the Jury rejects that interpretation of the contract. No doubt a chose in action may he sold, and when the transaction is, in the mind and intent of the parties, a sale, it will not he usurious; but even when the form and terms of a sale are used by the parties, if in truth it is with a corrupt intent, and for the purpose of securing to a lender usurious interest, it is void. Here the Jury have found that the agreement was with that intent and purpose.
The judgment and order denying a new trial should be affirmed.